24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON *SNLFV*

STATE OF LOUISIANA

NO. **845-334** HURRICANE CASE                    DIVISION *E*

HRON MANAGEMENT LLC and HRON REAL ESTATE, LLC

VERSUS

STATE FARM FIRE AND CASUALTY COMPANY

FILED: _____          DEPUTY CLERK _____

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs Hron Management LLC and Hron Real Estate, LLC., who files their Petition for Damages against State Farm Fire and Casualty Company, upon information and belief, respectfully representing the following:

### PARTIES

1.

Made Plaintiffs herein are:

    a.  Hron Management LLC, a Louisiana business entity domiciled and licensed to do and doing business in Jefferson Parish, Louisiana.

    b.  Hron Real Estate LLC, a Louisiana business entity domiciled and licensed to do and doing business in Jefferson Parish, Louisiana.

2.

Made defendant herein is State Farm Fire and Casualty Company ("State Farm") upon information and belief, a foreign insurance company authorized to do and doing business in the State of Louisiana, which may be served through its Registered Agent for Service of Process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, La 70809.

### JURISDICTION AND VENUE

3.

Jurisdiction is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure, Article 2.

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON  GODBEY

4.

Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure, Article 76.

**RELEVANT FACTS**

5.

At all times relevant hereto, Plaintiffs owned and/or had an interest in the properties located at 5616 Heebe Street, Elmwood, LA 70123 and 5613 Salmen Street, Harahan, La 70123(the "Property").

6.

At all times relevant hereto, defendant provided policies of insurance, number 98-EZ-2440-8 insuring Hron Management, LLC and 98-EZ-2441-0 insuring Hron Real Estate, LLC   (the "Policies"), which covered the Properties against perils including hurricanes.

7.

On August 29, 2021, the properties received significant damage from Hurricane Ida.

8.

Plaintiffs promptly reported the loss to State Farm.

9.

On September 24, 2021, State Farm inspected the properties, identifying $686.62 in damage. At the point of making this determination, State Farm concluded their inspection and made a determination that coverage to the property did exist.

10.

Plaintiffs hired HomeTown Restoration who conducted a detailed estimate and identified $612,028.11 in Hurricane Ida related damage.

11.

Plaintiffs could not repair the Property without insurance proceeds, and Plaintiffs promptly put defendant on notice of its deficient claims handling.

12.

To date, defendant has not adequately compensated Plaintiffs for their substantial and covered losses.

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON  GODBEY

13.

Defendant's failure to comply with the terms of its own Policy caused and continues to cause significant delay to the repair of Plaintiffs' property.

14.

Upon information and belief, defendant purposely and/or negligently failed to timely tender proceeds due Plaintiffs after having received satisfactory proof of loss.

15.

Upon information and belief, defendant purposely and/or negligently misrepresented to Plaintiffs the terms and conditions of the Policy.

16.

Upon information and belief, defendant conducted the investigation and claims handling for Plaintiffs' claim in violations of the defendant's duty of good faith and fair dealings.

17.

Plaintiffs have incurred and/or will incur additional expenses in making repairs because defendant failed to timely compensate them for their losses under the Policy.

18.

Plaintiffs have incurred and/or will incur professional expenses, including attorney's fees, to determine that defendant wrongfully failed to adequately/timely pay on their claims under the Policy.

**CAUSES OF ACTION**

**A. Breach of the Insurance Contract**

19.

Plaintiffs reallege and re-aver the allegations contained in paragraphs 1-18, above, as if restated herein.

20.

Despite having adequate proof of loss, defendant failed to timely tender adequate funds under the Policy.

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON  GODBEY

21.

An insurance contract, the Policy, exists between Plaintiffs and defendant.

22.

By purposely and/or negligently misrepresenting to Plaintiffs the terms and conditions of the relevant Policy, defendant breached the insurance contract.

23.

By not conducting the investigation and claims handling within the defendant's duty of good faith and fair dealings, defendant breached the insurance contract.

24.

By failing to adequately compensate Plaintiffs for damages to the Property, as required by the Policy, defendant breached the insurance contract.

25.

By failing to adequately compensate Plaintiffs for their business personal property, as required by the Policy, defendant breached the insurance contract.

26.

Plaintiffs have suffered and continues to suffer damages due to these breaches of the insurance contract.

**B. Breach Of Duty Of Good Faith And Fair Dealings**

27.

Plaintiffs realleges and re-avers the allegations contained in Paragraphs 1-26, above, as if restated herein.

28.

The actions and/or inactions of defendant in failing to adequately compensate Plaintiffs for the covered losses under the Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making defendant liable for statutory penalties for violations of the defendant's duty of good faith and fair dealings.

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON  GODBEY

29.

Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

30.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered a violation of an insurer's duty of good faith and fair dealings and is in violation of La. R.S. § 22:1973.

31.

La. R.S. § 22:1892 imposes penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

32.

Defendant is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Plaintiffs adequate payment in connection with their damages, despite having received satisfactory proof of loss following its own inspection(s) of the Property and following receipt of independent proofs of loss from Plaintiffs.

33.

Defendant's misrepresentation of the terms of the Policy violates their duty of good faith and fair dealings.

34.

Defendant's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claim(s) violates their duty of good faith and fair dealings.

35.

Defendant's handling of Plaintiffs' claim violates their duty of good faith and fair dealings.

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON GODBEY

## DAMAGES

36.

Plaintiffs reallege and re-aver the allegations contained in Paragraphs 1-35, above, as if restated herein.

37.

As a result of defendant's breaches of contract, violations of the defendant's duty of good faith and fair dealings, and other bad acts, Plaintiffs have incurred the following, non-exclusive damages:

a. Diminution of the value of the Property;

b. Actual repair costs;

c. Lost/damaged contents;

d. Any covered loss of business income/rents;

e. Embarrassment and loss of enjoyment of the use of their business;

f. Mental anguish;

g. Penalties delineated in La. R.S. §§ 22:1892 and 22:1973; and

h. Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

38.

WHEREFORE, Plaintiffs, Hron Management LLC and Hron Real Estate, LLC pray that:

1) Defendant, State Farm Fire and Casualty Company be served with a copy of this Petition and be duly cited to appear and answer the allegations contained therein,

2) After expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Plaintiffs Hron Management LLC and Hron Real Estate, LLC, and against defendant, State Farm Fire and Casualty Company, in an amount that will fully and fairly compensate Plaintiffs pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON GODBEY

RESPECTFULLY SUBMITTED:

*Michael D. Giardina*

**Michael Giardina (39192)**
**Michael@g-glawgroup.com**
Aaron Godbey (38534)
Devlan Melancon (39280)
Dante Cortello (39093)
(985) 590-4650
1381 Fremaux Avenue
Slidell, La 70458
Godbey Giardina Law Group, LLC.
*Attorney for Hron Management LLC and Hron Real*
*Estate, LLC*

**PLEASE SERVE:**

State Farm Fire and Casualty Company
*Through its registered agent for service of process:*
Louisiana Secretary of State,
8585 Archives Avenue,
Baton Rouge, La 70809

Rec'd via mail 8/28/23

SOS
50.00
CK#
4056

EBRS
40.44
CK#
4055

SncF
6250
CK#
4057

24th E-Filed: 08/22/2023 14:15 Case: 845334 Div:E Atty:038534 AARON GODBEY

**Jessica R Armond**

| | |
|---|---|
| **From:** | Jessica R Armond |
| **Sent:** | Wednesday, August 23, 2023 2:25 PM |
| **To:** | aaron@g-glawgroup.com |
| **Subject:** | EFile Case: 845334 |

Please contact the civil filing department regarding the document: Petition for Damages.pdf e-filed on 8/22/2023 2:15:56 PM.

In order to fully process your e-file we will need a service check made payable to East Baton Rouge Sheriffs Office for $40.44 and a check made payable to Secretary of State for $50.00.

## Effective Immediately;

On all Hurricane Ida suits, a special master fee will be collected. The plaintiff is responsible to pay $62.50. This is a one-time fee per case. It needs to be a separate check payable to "Special Master Fee".

**Mandy Plaisance**
*Civil Minute Clerk, Div. "I"*
*24th Judicial District Court Div. "I"*
*Jefferson Parish Clerk of Court*
Thomas F. Donelon Courthouse
200 Derbigny St. Ste. 3600
Gretna LA 70053
Phone: (504) 364-3912
Fax: (504) 364-3780



Please be advised that any information provided to the Jefferson Parish Clerk of Court may be subject to disclosure under the Louisiana Public Records Law. Information contained in any correspondence, regardless of its source, may be a public record subject to public inspection and reproduction in accordance with the Louisiana Public Records Law, La. Rev. Stat. 44:1 et seq.

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this e-mail or by telephone

**Jessica R Armond**

| | |
|---|---|
| **From:** | Jessica R Armond |
| **Sent:** | Wednesday, August 23, 2023 2:27 PM |
| **To:** | aaron@g-glawgroup.com |
| **Subject:** | 845-334 E |
| **Attachments:** | com_4bc837ac0ffc41ef93a0cc2aebb655a6.pdf |

## Please find attached copies of the following exhibits filed into

## Case #845-334 , Division : E

**1) STANDING CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA**

**2) STANDING ORDER FOR DISASTER DISCOVERY PROTOCOLS IN CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA**

**3) INTERIM PROTECTIVE ORDER REGARDING CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA**

**4) STANDING CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA EXHIBIT A: LIST OF APPOINTED NEUTRALS**

Thank you,

**Mandy Plaisance**
*Civil Minute Clerk, Div. "I"*
*24th Judicial District Court Div. "I"*
*Jefferson Parish Clerk of Court*
Thomas F. Donelon Courthouse
200 Derbigny St. Ste. 3600
Gretna LA 70053
Phone: (504) 364-3912
Fax: (504) 364-3780



Please be advised that any information provided to the Jefferson Parish Clerk of Court may be subject to disclosure under the Louisiana Public Records Law. Information contained in any correspondence, regardless of its source, may be a public record subject to public inspection and reproduction in accordance with the Louisiana Public Records Law, La. Rev. Stat. 44:1 et seq.

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this e-mail or by telephone.

FILED FOR RECORD 08/23/2023 14:19:44
Jessica R Armond DY CLERK
JEFFERSON PARISH LA

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____          _____
                                                **DEPUTY CLERK**

### STANDING CASE MANAGEMENT ORDER REGARDING
### CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA

On August 29, 2020, Hurricane Ida came ashore near Port Fourchon, Louisiana and traveled through Jefferson Parish. As a Category 4 (near 5) hurricane, it was the fifth strongest storm to ever impact the United States. Hurricane Ida tied the Last Island Hurricane in 1856 and Hurricane Laura in 2020 as the strongest to strike Louisiana, based on wind speed. The President of the United States issued a Declaration of a Major Disaster for the State of Louisiana on August 29, 2021. (*See* FEMA-4611-DR.) The Declaration expressly includes Jefferson Parish as an "adversely affected area by this major disaster."[1] Major Hurricane-force winds, with gusts in excess of 155 mph, covered the entirety of Jefferson Parish, and inflicted catastrophic damage throughout this Court's jurisdiction. Hurricane Ida may sometimes hereinafter be referred to as the "Hurricane," and the causes of action arising therefrom may sometimes be referred to as "the Hurricane Cases."

In the aftermath of this catastrophic natural disaster, this Court recognizes that it will soon preside over substantial volumes of insurance coverage-related litigation linked to the Hurricane. Additionally, and like so many other courts across the globe, this Court has faced significant challenges to conducting court business for the better part of a year, as a result of the on-going COVID-19 pandemic. The residents and businesses of Louisiana have similarly struggled to cope with the negative economic impact of COVID-19, even before Hurricane Ida.

_____

[1] https://www.fema.gov/disaster-federal-register-notice/4611-dr-la-initial-notice

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



JON A. GEGENHEIMER

01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:1 of 14 - Jefferson Parish Clerk of Court: 231839

12300758

In the weeks following Hurricane Ida, many related lawsuits will be filed and be pending before this Court. In Act 318 of the 2020 Regular Session the Louisiana Legislature amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[2]

Act 318 authorizes this Court to enter this CMO, and after consultation with and upon the recommendation of the Special Master and in consideration of the high volume of cases from Jefferson Parish in state and federal courts, this Court finds it warranted to enter this CMO to best accommodate the adjudication of Hurricane Cases in this Court.

Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the Jefferson Parish community to move forward with crucial recovery efforts, in the aftermath of Hurricane Ida, and the COVID-19 pandemic. In consideration of these aims and the law, after due consideration of the Case Management Orders and discovery protocols implemented by the 14th Judicial District Court and the U.S. District Court for the Western District of Louisiana following Hurricanes Laura and Delta, the 24th Judicial District Court issues the instant Case Management Order, to-wit:

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately applicable to all Hurricane Cases.

### SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCOVERY

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by 14th Judicial District Court and the U.S. District Court for the Western District of Louisiana following Hurricanes Laura and Delta filed in those courts. The Federal Court considered the Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey. The 14th Judicial District Court considered the Disaster Protocols implemented by the Federal Courts. These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an

---

[2] *See* La. R.S. 13:4165(F).

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



JON A. GEGENHEIMER

**12300758**

expedited mediation procedure. Accordingly, on _____, 2022, this Court issued a Standing Order for Disaster Discovery Protocols in Certain Property Damage Suits Arising from Hurricane Ida ("Disaster Discovery Protocols") therefore,

IT IS FURTHER ORDERED that the Disaster Discovery Protocols Initial Discovery Protocols are deemed incorporated into this CMO *in extenso* and are applicable to all Hurricane Cases filed in this Court. The disclosures and exchange of information required by the Disaster Discovery Protocols Order issued on _____, 2022 shall be due forty-five (45) days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline." No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 75 days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of the Court.

IT IS FURTHER ORDERED that each party shall supplement their Initial Disclosures at least fifteen (15) days prior to any scheduled mediation pursuant to the CMO.

Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure, except that requests for subpoenas and subpoenas *duces tecum* shall not be submitted during the SSP without pre-approval of the Special Master or leave of the Court.

### SECTION 2. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction, *supra,* the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq,*

IT IS FURTHER ORDERED that JONATHAN C. PEDERSEN, BLAIR C. CONSTANT and DONALD MASSEY, are hereby appointed as the Special Masters (hereinafter "Special Master") for Hurricane Cases in the 24th Judicial District Court.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



Standing Case Management Order
Hurricane Ida Litigation
3

12300758

As part of this appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence, and shall exercise the respective rights and responsibilities to direct the Streamlined Settlement Process ("SSP") as provided in this Order.

**IT IS HEREBY FURTHER ORDERED** that the Appointed Neutrals, referenced in Section 3(B)(2)(a), *infra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

A.    **The Special Master.**  The Special Master shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefings, engage in discovery, and attend settlement conferences. Nothing in this part shall prevent regular formal discovery or motions to compel to be filed with and heard by the assigned District Judge.

B.    **Compensation of Special Master and Appointed Neutrals.**  The Special Master and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

(1)    $400 per hour for the Special Master;

(2)    $400 per hour for the Appointed Neutrals;

(3)    $250 per case for the Special Master for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals and shall be paid by the parties at the time their respective initial pleadings are filed; and

(4)    All actual expenses of the Special Master and Appointed Neutrals, including but not limited to travel, meeting rooms and video conference means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defendant(s).

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



JON A. GEGENHEIMER

01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:4 of 14 - Jefferson Parish Clerk of Court: 231839

**12300758**

C.   **Role of Special Master and Appointed Neutrals**

(1)   The Special Master and Appointed Neutrals may communicate ex parte with the Court when deemed appropriate by the Court, or the Special Master, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

(2)   The Special Master and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

(3)   The Special Master and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

(4)   The Special Master may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

D.   **Notice of Opt-Out Motion to the Special Master.** Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP for good cause shown, which motion must be filed within the time delay contained in Section 3, *infra*.

**IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master, regardless whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where counsel for the party has been provided a copy of this Order). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:5 of 14 - Jefferson Parish Clerk of Court: 231839

**SECTION 3. STREAMLINED SETTLEMENT PROCESS ("SSP")**

Within 30 days of the filing of the defendant's responsive pleading (or within 15 days of the transmittal to their counsel of a copy of this Order, including by electronic or other means - whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process ("SSP") for good cause shown. A motion to opt-out of the SSP is not a responsive pleading for any deadline contained in this CMO. Unless the Court authorizes an opt-out, the parties shall participate in the three-stage Streamlined Settlement Process, which is described as follows:

A. **First Stage: Initial Settlement Conference with Special Master.** Within 30 days of the Disclosure Deadline in all Hurricane Cases, all parties shall participate in an informal settlement conference with the Special Master or his Deputy. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms. Counsel for each plaintiff and for each defendant must have full authority from their clients to resolve the case, who shall be readily available by telephone if circumstances for that particular settlement conference require assistance.

B. **Second Stage: Mediation.** Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The Special Master shall assign each Hurricane Case to an Assigned Neutral from the court approved list found in Paragraph B(2) of this Subsection, and it is the goal that Assigned Neutrals complete mediation within 70 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties.

   (1) **Conduct of Mediation.**

      (a) After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:6 of 14 - Jefferson Parish Clerk of Court: 231839

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 .::: 12300758 MORTGAGE BOOK 5014 PAGE 102

confidential mediation statements and the permissible number of exhibits attached thereto.

(b) Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone, if circumstances for that particular mediation require assistance.

(c) To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

(d) As part of this Streamlined Settlement Process, the attendees may each make opening statements but there shall be no live witness testimony.

(2) **Approved Neutrals.** The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

(a) Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5)(6), including:

| | |
|---|---|
| Hon. Carolyn Gill-Jefferson (ret.) | Hon. "Rusty" Knight (ret.) |
| Hon. Cornelius Regan (ret.) | Hon.Ronald J. Sholes (ret.) |
| Hon. Franz Ziblich (ret.) | Ashley Bass, Esq. |
| Jacques Bezou, Esq. | Robert Raymond, Esq. |
| Blair C. Constant, Esq. | Bobby M. Harges, Esq. |
| Michelle Craig, Esq. | Ross Legarde, Esq. |
| Fred Herman, Esq. | Jonathan Pedersen, Esq. |
| Donald Massey, Esq. | Chadwick J. Mollere, Esq. |
| Roger A. Javier, Esq. | Bryan Reuter, Esq. |
| Ronald L. Faia, Jr., Esq. | Hon. Glenn Ansardi (ret.) |
| Joseph Hassinger, Esq. | Stacy Palowsky, Esq. |
| Brigid Collins, Esq. | |



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:7 of 14 - Jefferson Parish Clerk of Court: 231839

(b)   Any person designated as a neutral pursuant to any Case Management Order that the U.S. District Court for the Eastern District of Louisiana may enter in connection with Hurricane Ida cases.

(3)   **Neutral Training.** The Special Master may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Master and his Deputy may jointly form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Master or his Deputy may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Master or his Deputy may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Master or his Deputy may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

(4)   **Neutral Reporting.** Within 5 days of the mediation date, the Neutral shall inform the Special Master of the outcome of the mediation.

(5)   **Stipulation for Mediation.** The Neutral, the Parties and counsel for the parties must execute the Stipulation for Mediation attached hereto as Exhibit A.

C.   **Third Stage: Final Settlement Conference with Special Master.** In the event a case does not settle during the Mediation Phase, the parties shall participate in a final settlement conference with the Special Master or his Deputy. The Special Master should aspire to conduct this final settlement conference within 45 days of receiving notice from the Neutral that a particular case did not settle during the mediation phase. To facilitate this final settlement conference, the Special Master or his Deputy may require the parties to submit additional mediation statements and set restrictions upon the number and type of exhibits attached thereto. The Special Master

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



or his Deputy may also communicate with the Neutral who conducted the mediation so as to facilitate a productive final settlement conference. A scheduling order will not be entered by the Court unless the Special Master or his Deputy have filed a certificate into the record attesting that all parties have participated in the final settlement conference with the Special Master or his Deputy.

D.   **Extensions of Time.**  Upon a joint request by the parties, for other good cause shown, or for case management purposes, the Special Master or his deputy may extend any deadline specified in this Order by up to 15 days.

## SECTION 4. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

A.   **Where Parties HAVE been allowed to Opt Out of the SSP.**  If any party has been permitted to opt out of the SSP following a timely motion for the same, any party requesting appointment of an Umpire shall file a motion requesting same with the case's assigned District Judge, which motion shall be set for contradictory hearing. Counsel for either or both the Insured and the Insurer may also submit a joint motion requesting appointment of an Umpire to the Civil Duty Judge, who may agree to hear the motion during their respective duty week.

B.   ***Where Parties Have NOT Opted Out of the SSP.***  In all other cases, any request for the appointment by the Court of an Umpire shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master in the same manner as provided for a discovery dispute under the SSP, and the parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at *jcpedersen@specialmasterservices.com.* The deadline may be extended by the Special Master in exceptional circumstances.

C.   ***Umpire-Only Filing.***  If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures in

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



Subsection 4(1). Any such request shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading, and any such motion or request for this Court's appointment of an Umpire shall be referred to the Special Master under the above captioned general docket created for the Hurricane Cases. The parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at *jcpedersen@specialmasterservices.com*. The deadline may be extended by the Special Master in exceptional circumstances.

(1)   An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

(2)   A written report and recommendation following the Umpire's appointment shall be issued to the parties, and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge following a motion filed with the assigned District Judge within seven days of transmittal of the written report.

(3)   In an Umpire Only Filing, the Special Master shall provide the report and recommendation to the parties, who will in turn provide the same to the civil Duty Judge as of the time of the issuance of the report and recommendations. Similarly, the recommendation shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the civil Duty Judge following a motion filed with the civil Duty Judge within seven days of transmittal of the written report.

### SECTION 5. CLERK OF COURT AND NOTICE

A.   Any Plaintiff filing a Hurricane Case should note on its cover letter to the Clerk, in **all *CAPS type*** and red font (if possible) that the matter is a **"HURRICANE CASE." Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.** If the Special Master learns the Order has not been entered by the Clerk of

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:10 of 14 - Jefferson Parish Clerk of Court: 231839

Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

B. In all Hurricane Cases, a copy of this Order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

C. The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

D. Any party making any filing in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at *jcpedersen@specialmasterservices.com*.

### SECTION 6. COURT SUPERVISION

The Disaster Discovery Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall become effective December 1, 2022 and shall be applicable to all cases whether then pending or thereafter filed.

**DONE AND SIGNED** this _____14th_____ day of ___December___ , 2022, at _____Gretna_____ , Jefferson Parish, Louisiana.


JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"



Standing Case Management Order
Hurricane Ida Litigation
11

01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:11 of 14 - Jefferson Parish Clerk of Court: 231839

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N"

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____          _____

                                      **DEPUTY CLERK**

## STIPULATION FOR MEDIATION IN STREAMLINED SETTLEMENT PROGRAM

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1. The parties have agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Standing Case Management Order (and any relevant amendments).

2. No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is executed, or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and, except as provided by Order of the Court, it shall not be revealed by the neutral unless and until the party who provided that information agrees to its disclosure.

3. The mediation process shall be considered a settlement negotiation for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. Provided, however, that evidence otherwise subject to discovery or admissible is not excluded from discovery or admission in evidence simply as a result of it having been used in connection with this mediation process.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

4. The appointed neutral and his or her agents shall have the same immunity as judges and court employees have under Louisiana law and jurisprudence from liability for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5. The parties (i) shall not call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation, and (ii) shall not subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation, and (iii) shall not offer into evidence any statements, views or opinions of the appointed neutral.

6. Any party to this Stipulation is required to attend at least one mediation session and as may be directed by the Special Master as many other sessions thereafter as may be helpful in resolving this dispute.

7. An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

Dated:_____

_____
First Plaintiff's Signature

_____
First Defendant's Signature

_____
Second Plaintiff's Signature

_____
Second Defendant's Signature

_____
Counsel for Plaintiff

_____
Counsel for Defendant

_____
Counsel for Plaintiff

_____
Counsel for Defendant

_____
Appointed Neutral

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:14 of 14 - Jefferson Parish Clerk of Court: 231839

FILED FOR RECORD 08/23/2023 14:20:03
Jessica R Armond DY CLERK
JEFFERSON PARISH LA

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STANDING ORDER FOR DISASTER DISCOVERY PROTOCOLS
### IN CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

This Court hereby issues the following Standing Order establishing protocols for discovery ("Disaster Discovery Protocols") for all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases"),

**IT IS ORDERED** that within forty-five (45) days after the defendant's submission of a responsive pleading or motion, the parties must exchange any documents or information listed in these Disaster Discovery Protocols, for any such time periods identified in these Disaster Discovery Protocols.

**IT IS FURTHER ORDERED** that all parties shall remain under an ongoing duty to supplement their responses. No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than seventy (75) days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of this Court. Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure except the restriction on subpoenas and subpoenas duces tecum articulated in Section 1 of the Standing Case Management Order Regarding Certain Property Damages Suits Arising From Hurricane Ida issued on December 14, 2022.

<div style="text-align:right">
EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103
</div>



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:1 of 10 - Jefferson Parish Clerk of Court: 231840

**IT IS FURTHER ORDERED** that a party may object to disclosure of these Disaster Discovery Materials only if the material is Privileged as that term is defined herein. Any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be resolved by contradictory motion before the assigned District Judge. The District Judge may direct that the disputed items be provided to the Court for *in camera* inspection prior to the hearing of the motion.

**IT IS FURTHER ORDERED** that on belief of a party that good cause exists as to why a particular case should be exempted from the Disaster Protocols, in whole or in part, that party must file their objection with the Court prior to the expiration of the 45-day period set forth herein.

<div align="center">

**DISASTER DISCOVERY PROTOCOLS**

</div>

**PART 1: INTRODUCTION AND DEFINITIONS.**

    (1)    Statement of purpose.

            a.    These Disaster Discovery Protocols apply to cases involving first-party insurance property damage claims arising from natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

            b.    The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law or other

<div style="text-align: right; writing-mode: vertical-rl;">EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103</div>


01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:2 of 10 - Jefferson Parish Clerk of Court: 231840

JON A. GEGENHEIMER

applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

c.   Except as modified by the Court, these Disaster Discovery Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every disaster case. The information and documents required to be produced includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues.

(2)   Definitions. The following definitions apply to these Disaster Discovery Protocols:

a.   ***Claimed loss***. "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

b.   ***Document***. "Document" and '·documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(I )(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

c.   ***Event***. "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d.   ***Identify (Documents).*** When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e.   ***Identify (Natural Persons).*** When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f.   ***Identify (Non-Natural Persons or Entities).*** When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g.  **Insurer.** "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h.  **Insured.** "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i.  **Loss.** "Loss" means damage to the Property caused by the Event.

j.  **Other Insurance.** "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

k.  **Policy.** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

l.  **Privilege.** "Privilege" means information and documents that are protected from disclosure by the attorney-client privilege, or work-product protection, including any joint defense agreement. privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney. Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are <u>not</u> privileged and should be produced.

m.  **Property.** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

n.  **Relating to.** "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

a.  The relevant time period for this Disaster Discovery begins on the date immediately before the Event and ends on the date the lawsuit is filed for the Claimed Loss, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below.

b.  This Disaster Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim. A detailed privilege log is required as specified in this Order or any subsequent Orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the Court orders or the applicable rules require production.



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:4 of 10 - Jefferson Parish Clerk of Court: 231840

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103

c.  If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Discovery Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

d.  For this Disaster Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Disaster Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery at a later date.

e.  This Disaster Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

f.  Within 14 days after the filing of a responsive pleading by the responding party, the Parties shall meet and confer on the format (e.g., searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

## PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED

(1)  Timing.

Unless the Court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court.)

(2)  Information to be produced by the Insured:

a.  A description of the Insured's ownership or other interest in the Property.

b.  The address of the Property (or location of movable Property) on the date of the Event.

c.  The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d.  Identify any current mortgagee or other known lien holder.

e.  A computation of each item or type of Claimed Loss, including contents claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.



**12300759**

f.  Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g.  Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h.  Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

i.  With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

j.  Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

k.  A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

l.  A general description of any known preexisting damage to the Property relating to the Claimed Loss.

m.  A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

n.  Identify any sale, transfer, or foreclosure of the Property after the Event.

(3)  Complete and unaltered copies of the following documents to be produced by the Insured:

a.  Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

b.  Proofs of loss for the Claimed Loss.

c.  Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

d.  Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

e.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



f.    Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

g.    The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

h.    Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

i.    If there has been an appraisal under the Policy, documents relating to the appraisal process.

j.    Any other document(s) on which the Insured relies to support the Claimed Loss.

## PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

(1)    Timing.

Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiffs claim). The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

(2)    Information to be produced by the Insurer:

a.    **If there is a dispute over coverage**, in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:
        i.    Any exclusions or exceptions, or other coverage or legal defenses;
        ii.    The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;
        iii.    Whether there is also a dispute as to the value or amount of the Claimed Loss;
        iv.    Any other basis on which coverage was denied.

b.    **If there is a dispute over all or part of the valuation**, an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:
        i.    The Insurer's understanding of the nature of the dispute;
        ii.    The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and
        iii.    The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

c.    Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



**12300759**

d.   Any payments previously made under the Policy relating to the Event.

e.   A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

f.   Any other Event-related lawsuits filed for the Property or the Insured.

g.   Identify the adjuster(s) who handled the claim.

h.   Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claims decision.

i.   Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

j.   If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4)   Complete and unaltered copies of the following documents to be produced by the Insurer:

a.   The entire claim file maintained by the Insurer.

b.   The complete Policy in effect at the time of the Event.

c.   Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

d.   Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

e.   Any other evaluations of the Claimed Loss.

f.   Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

g.   Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

h.    The complete underwriting file maintained by the Insurer relating to the Property, its conditions, or coverage.

i.    Proofs of loss for the Claimed Loss.

j.    If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k.    Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane or to similar types of claims, generally such that they would therefore be applicable to the Hurricane Case including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l.    For non-NFIP Claims, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m.    Any other document(s) on which the Insurer relies to support its defenses.

**DONE AND SIGNED** this ____ day of _____, 2022, at Gretna,

Jefferson Parish, Louisiana.


JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"


JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"


JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"


JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"



EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103

**12300759**

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N'

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 .::: 12300759 MORTGAGE BOOK 5014 PAGE 103



FILED FOR RECORD 08/23/2023 14:20:57
Jessica R Armond DY CLERK
JEFFERSON PARISH LA

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

**INTERIM PROTECTIVE ORDER REGARDING
CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA**

The Disaster Discovery Protocols for First-Party Insurance Property Damage Cases for all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases") are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. This Interim Protective Order will remain in place until the parties agree to, or the Court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to discovery conducted after the parties complete the Streamlined Settlement Program. The parties may agree to use the Interim Protective Order throughout litigation.

**IT IS HEREBY ORDERED** that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Discovery Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 1230760 MORTGAGE BOOK 5014 PAGE 104

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
1



3.  If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the Court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4.  Information or documents designated as "Confidential" must not be disclosed to any person, except:

    a.  the requesting party and counsel, including in-house or agency counsel;

    b.  employees of counsel assigned to and necessary to assist in the litigation;

    c.  consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

    d.  any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information;

    e.  The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury; and

    f.  The Special Master, Deputy Special Master, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5.  Before disclosing or displaying Confidential Information to any person, a party must:

    a.  inform the person of the confidential nature of the information and documents; and

    b.  inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
2



6. The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form detailed in Section 6(a), *infra*.

6(a). The Confidentiality Agreement shall read as follows:

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled [CASE CAPTION] have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.

_____        DATED: _____
Signature of [NAME]

_____        DATED: _____
Signature of Counsel

6(b). If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7. The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8. Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
3



9.  At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information.

This Order does not diminish the right of any party to apply to the Court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order.

**DONE AND SIGNED** this _14th_ day of _December_, 2022, at Gretna, Jefferson Parish, Louisiana.

JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"

JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
4

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104



JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N"

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 .::: 12300760 MORTGAGE BOOK 5014 PAGE 104



Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
5

FILED FOR RECORD 08/23/2023 14:21:23
Jessica R Armond DY CLERK
JEFFERSON PARISH LA

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STANDING CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA, EXHIBIT A: LIST OF APPOINTED NEUTRALS

**IT IS HEREBY ORDERED** that the following individuals shall supplement and comprise the Appointed Neutrals referenced in the Standing Case Management Order, Section 3(B)(2)(a), *infra*, and are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

    **(2)**    **Approved Neutrals.** The Court hereby designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

        **(a)**    Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5)(6), including:

| | |
|---|---|
| Hon. Carolyn Gill-Jefferson (ret.) | Hon. "Rusty" Knight (ret.) |
| Hon. Cornelius Regan (ret.) | Hon.Ronald J. Sholes (ret.) |
| Hon. Franz Zibilich (ret.) | Ashley Bass, Esq. |
| Jacques Bezou, Esq. | Hon. Glenn Ansardi (ret.) |
| Blair C. Constant, Esq. | Robert Raymond, Esq. |
| Michelle Craig, Esq. | Bobby M. Harges, Esq. |
| Fred Herman, Esq. | Ross Legarde, Esq. |
| Donald Massey, Esq. | Jonathan Pedersen, Esq. |
| Roger A. Javier, Esq. | Chadwick J. Mollere, Esq. |
| Ronald L. Faia, Jr., Esq. | Brian Reuter, Esq. |
| Joseph Hassinger, Esq. | Brigid Collins, Esq. |
| Stacy Palowsky, Esq. | Charles Cusimano, IV, Esq. |
| Christy Remy, Esq. | Harold Adkins, Esq. |
| David Bienvenu, Esq. | Mark Tauzier, Esq. |
| Jack Morris, Esq. | Lacy Smith, Esq. |
| Dustin Carter, Esq. | Eric Nowak, Esq. |

EFILE: 06/13/2023 11:07 AM JEFF PAR 7580166 david $0.00 ::: 12325320 MORTGAGE BOOK 5033 PAGE 85



06/13/2023 11:07:16 CERTIFIED TRUE COPY - Pg:1 of 3 - Jefferson Parish Clerk of Court: 2371148

**12325320**

(b) Any person designated as a neutral pursuant to any Case Management Order that the U.S. District Court for the Eastern District of Louisiana may enter in connection with Hurricane Ida cases.

**DONE AND SIGNED** this _26th_ day of _April_____, 2023, at

_Gretna_____, Jefferson Parish, Louisiana.


JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"

JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

EFILE: 06/13/2023 11:07 AM JEFF PAR 7580166 david $0.00 ::: 12325320 MORTGAGE BOOK 5033 PAGE 85



**12325320**

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N'

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"

EFILE: 06/13/2023 11:07 AM JEFF PAR 7580166 david $0.00 ::: 12325320 MORTGAGE BOOK 5033 PAGE 85





(101)  CITATION: PETITION FOR DAMAGES; EXHIBIT - STANDING CASE
MANAGEMENT ORDER/EXHIBIT -ORDER FOR DISCOVERY
PROTOCOLS/EXHIBIT- INTERIM PROTECTIVE ORDER/EXHIBIT-
STANDING CASE MANAGEMENT ORDER- EXHIBIT-A

230830-3450-6

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

HRON MANAGEMENT LLC AND HRON REAL ESTATE
LLC
    versus
STATE FARM FIRE AND CASUALTY COMPANY

Case: 845-334    Div: "E"
P 1  HRON MANAGEMENT LLC

To:  STATE FARM FIRE AND CASUALTY COMPANY
THROUGH ITS REGISTERED AGENT FOR SERVICE
OF PROCESS:
LOUISIANA SECRETARY OF STATE
8585 ARCHIVES AVENUE
BATON ROUGE LA 70809

SOS CK#4056 - $50.00
EBR CK#4055 - $40.44

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES of which a true and correct copy accompanies this citation, or make an appearance
either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of
Jefferson, State of Louisiana, within TWENTY-ONE (21) CALENDAR days after the service
hereof, under penalty of default.

This service was requested by attorney AARON GODBEY and was issued by the Clerk of Court
on the 30th day of August, 2023.

/s/ Heather B. Dominick
Heather B. Dominick, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101)  CITATION: PETITION FOR DAMAGES; EXHIBIT - STANDING CASE
MANAGEMENT ORDER/EXHIBIT -ORDER FOR DISCOVERY
PROTOCOLS/EXHIBIT- INTERIM PROTECTIVE ORDER/EXHIBIT-
STANDING CASE MANAGEMENT ORDER- EXHIBIT-A

230830-3450-6

Received:_____  Served:_____  Returned:_____

Service was made:
___ Personal          ___ Domiciliary _____

Unable to serve:
    ____ Not at this address    ___ Numerous attempts _____ times
    ____ Vacant              ___ Received too late to serve
    ____ Moved             ___ No longer works at this address
    ____ No such address     ___ Need apartment /  building number
    ____ Other _____

Service: $_____    Mileage: $_____    Total: $_____

Completed by:_____ # _____
                  Deputy Sheriff
Parish of: _____

Imaged 08/30/2023 02:18 - Signed: Deputy Clerk of Court /s/ Heather B. Dominick

Thomas F. Donelon Courthouse : 200 Derbigny St. : Gretna LA 70053

(101) CITATION: PETITION FOR DAMAGES; EXHIBIT - STANDING CASE MANAGEMENT ORDER/EXHIBIT -ORDER FOR DISCOVERY PROTOCOLS/EXHIBIT- INTERIM PROTECTIVE ORDER/EXHIBIT- STANDING CASE MANAGEMENT ORDER- EXHIBIT-A

230830-3450-6

FILED FOR RECORD 09/20/2023 13:39:30
Dianne A. Everage DY CLERK
JEFFERSON PARISH LA

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

HRON MANAGEMENT LLC AND HRON REAL ESTATE LLC

versus

STATE FARM FIRE AND CASUALTY COMPANY

Case: 845-334    Div: "E"

P 1  HRON MANAGEMENT LLC

To:  STATE FARM FIRE AND CASUALTY COMPANY
THROUGH ITS REGISTERED AGENT FOR SERVICE
OF PROCESS:
LOUISIANA SECRETARY OF STATE
8585 ARCHIVES AVENUE
BATON ROUGE LA 70809

SOS CK#4056 - $50.00
EBR CK#4055 - $40.44

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR DAMAGES of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, within TWENTY-ONE (21) CALENDAR days after the service hereof, under penalty of default.

This service was requested by attorney AARON GODBEY and was issued by the Clerk of Court on the 30th day of August, 2023.

/s/ Heather B. Dominick
Heather B. Dominick, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101) CITATION: PETITION FOR DAMAGES; EXHIBIT - STANDING CASE MANAGEMENT ORDER/EXHIBIT -ORDER FOR DISCOVERY PROTOCOLS/EXHIBIT- INTERIM PROTECTIVE ORDER/EXHIBIT- STANDING CASE MANAGEMENT ORDER- EXHIBIT-A

230830-3450-6

Received:_____    Served:_____    Returned:_____

Service was made:
___ Personal            ___ Domicilary _____

Unable to serve:
___ Not at this address    ___ Numerous attempts _____ times
___ Vacant              ___ Received too late to serve
___ Moved              ___ No longer works at this address
___ No such address      ___ Need apartment / building number
___ Other _____

Service: $_____    Mileage: $_____    Total: $_____

Completed by:_____    # _____
                    Deputy Sheriff
Parish of: _____

I made service on the named party through the

Office of the Secretary of State on

SEP 12 2023

by tendering a copy of this document to:

_____ JULIE NESBITT _____

_____ DY. B. GARAFOLA #0577 _____
Deputy Sheriff, Parish of East Baton Rouge, LA

RECEIVED
SEP 11 2023
E.B.R. SHERIFF'S OFFICE

RECEIVED VIA MAIL
FOR RECORD 10/31/2023 11:25:50
Abigail J. Danna DY CLERK
JEFFERSON PARISH LA

Filed by FAX
Date: 10/27/2023
Time: 11:55 AM
Deputy Clerk: /s/Abigail J. Danna

DI 800
728

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO. 845-334          HURRICANE IDA CASE          DIVISION E

## HRON MANAGEMENT LLC and HRON REAL ESTATE, LLC

## VERSUS

## STATE FARM FIRE AND CASUALTY COMPANY

FILED:_____          _____

                                        **DEPUTY CLERK**

## ANSWER AND DEFENSES

**NOW COMES** Defendant, State Farm Fire and Casualty Company ("State Farm"), through undersigned counsel, who in Answering Plaintiff's Petition for Damages, denies each and every allegation contained therein except those that are expressly admitted herein.

**AND NOW**, answering the severally numbered articles of the Plaintiff's Complaint, State Farm respectfully avers:

### 1(a).

The allegations contained in paragraph 1(a) as to the status Hron Management LLC are denied as written. State Farm admits that Hron Management LLC is a Louisiana limited liability company. The members of this limited liability company are unknown at this point in time. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

### 1(b).

The allegations contained in paragraph 1(a) as to the status Hron Real Estate LLC are denied as written. State Farm admits that Hron Real Estate LLC is a Louisiana limited liability company. The members of this limited liability company are unknown at this point in time. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

### 2.

The allegations contained in paragraph 2 as to the status of State Farm and service of process are admitted. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

### 3.

State Farm admits subject matter jurisdiction. State Farm denies it is presently liable to

Plaintiffs for either contractual or statutory damages.

4.

State Farm admits venue. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

5.

State Farm denies the allegations contained in paragraph 5 for lack of sufficient information to justify a belief therein. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

6.

State Farm denies the allegations of Paragraph 6 as written. State Farm admits that policies were issued, subject to all terms and conditions. State Farm avers that the polices, being written contracts, are the best evidence of their terms, conditions, and exclusions which are incorporated as if pled herein in their entirety. State Farm denies everything at variance therewith. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

7.

State Farm denies the allegations of Paragraph 7 as written. State Farm admits that Plaintiffs' Property sustained some damage as a result of Hurricane Ida. The amount and significance of damage sustained by Plaintiffs is in dispute. State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

8.

State Farm denies the allegations of Paragraph 8 as written. State Farm admits that damage was reported. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

9.

The allegations contained in paragraph 9 are denied as written. State Farm admits that an adjuster inspected the Property on behalf of State Farm. State Farm further admits that policies were issued, subject to all terms and conditions. State Farm avers that the policy, being a written contract, is the best evidence of its terms, conditions, and exclusions which are incorporated as if pled herein in their entirety. State Farm denies everything at variance therewith. State Farm asserts

that all undisputed amounts for which State Farm has received sufficient proof of loss have been

timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

10.

State Farm denies the allegations of Paragraph 10 as written. State Farm admits that it

received submissions on behalf of Plaintiffs. The submissions, being written documents, are the

best evidence of their contents. The accuracy and correctness of the submissions are disputed.

State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof

of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or

statutory damages.

11.

State Farm denies the allegations of Paragraph 11. State Farm asserts that all undisputed

amounts for which State Farm has received sufficient proof of loss have been timely paid and

denies it is presently liable to Plaintiffs for either contractual or statutory damages.

12.

State Farm denies the allegations of Paragraph 12. State Farm asserts that all undisputed

amounts for which State Farm has received sufficient proof of loss have been timely paid and

denies it is presently liable to Plaintiffs for either contractual or statutory damages.

13.

State Farm denies the allegations of Paragraph 13. State Farm asserts that all undisputed

amounts for which State Farm has received sufficient proof of loss have been timely paid and

denies it is presently liable to Plaintiffs for either contractual or statutory damages.

14.

State Farm denies the allegations of Paragraph 14. State Farm specifically asserts that it

has complied with all applicable laws and regulations in the handling of Plaintiff's claim and

further asserts that all undisputed amounts for which State Farm has received sufficient proof of

loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either

contractual or statutory damages.

15.

State Farm denies the allegations of Paragraph 15. State Farm specifically asserts that it

has complied with all applicable laws and regulations in the handling of Plaintiff's claim and

further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

16.

State Farm denies the allegations of Paragraph 16. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

17.

State Farm denies the allegations of Paragraph 17. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

18.

State Farm denies the allegations of Paragraph 18. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

19.

In response to Paragraph 19, State Farm fully repeats, reiterates, and re-alleges its defenses and answers to Paragraphs 1 through 18, as if fully set forth herein.

20.

State Farm denies the allegations of Paragraph 20. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

21.

State Farm admits that policies were issued, subject to all terms and conditions. State Farm avers that the policy, being a written contract, is the best evidence of its terms, conditions, and exclusions which are incorporated as if pled herein in their entirety. State Farm denies everything at variance therewith. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

22.

State Farm denies the allegations of Paragraph 22. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

23.

State Farm denies the allegations of Paragraph 23. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

24.

State Farm denies the allegations of Paragraph 24. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

25.

State Farm denies the allegations of Paragraph 25. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

26.

State Farm denies the allegations of Paragraph 26. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

27.

In response to Paragraph 27, State Farm fully repeats, reiterates, and re-alleges its defenses and answers to Paragraphs 1 through 26, as if fully set forth herein.

28.

State Farm denies the allegations of Paragraph 28. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

29,

The allegations contained in Paragraph 29 require no answer on the part of State Farm as these allegations call for legal conclusions. To the extent an answer is required, State Farm admits certain obligations under Louisiana Law, subject to any changes made by the Louisiana Insurance Commissioner. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

30.

The allegations contained in Paragraph 30 require no answer on the part of State Farm as these allegations call for legal conclusions. To the extent an answer is required, State Farm admits certain obligations under Louisiana Law, subject to any changes made by the Louisiana Insurance Commissioner. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies

it is presently liable to Plaintiffs for either contractual or statutory damages.

31.

The allegations contained in Paragraph 31 require no answer on the part of State Farm as these allegations call for legal conclusions. To the extent an answer is required, State Farm admits certain obligations under Louisiana Law, subject to any changes made by the Louisiana Insurance Commissioner. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

32.

The allegations contained in paragraph 32 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

33.

The allegations contained in paragraph 33 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

34.

The allegations contained in Paragraph 34 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

35.

The allegations contained in Paragraph 35 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and

further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

36.

In response to Paragraph 36, State Farm fully repeats, reiterates, and re-alleges its defenses and answers to Paragraphs 1 through 35, as if fully set forth herein.

37,

The allegations contained in Paragraph 37 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

38.

The allegations contained in Paragraph 38 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

39.

State Farm joins in Plaintiffs' request for trial by jury.

## AFFIRMATIVE DEFENSES

And now, in further responding to the allegations, State Farm asserts the following affirmative defenses, to the extent applicable:

## FIRST DEFENSE

The claims asserted in the Complaint for Damages are based on a contract of insurance between the parties. State Farm avers that the policy issued to Plaintiffs, being a written contract, is the best evidence of the terms, conditions, exclusions, and limitations contained therein, all of which are pled as if copied herein in their entirety.

## SECOND DEFENSE

Certain damages sought by Plaintiffs were not caused by a covered cause of loss pursuant

to the terms and conditions of the applicable State Farm insurance policy.

### THIRD DEFENSE

To the extent that Plaintiffs have already received any payments from State Farm for their losses, State Farm avers that those payments were appropriate, that Plaintiffs have already been paid everything that they are owed under the insurance policy, and in the event of a further judgment in favor of Plaintiffs, State Farm claims a credit or a setoff for all amounts previously paid.

### FOURTH DEFENSE

State Farm avers that the insurance policy at issue excludes the following losses:

### SECTION I – LOSSES NOT INSURED

1.   We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . . .

   g.   wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

   h.   corrosion, electrolysis, or rust;

   i.   wet or dry rot;

. . . .

   k.   settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;
   ....

However, we will pay for any resulting loss from items a. through 1. Unless the resulting loss is itself a Loss Not Insured by this Section.

### FIFTH DEFENSE

State Farm avers that the insurance policy at issue excludes the following losses:

### SECTION 1 – LOSSES NOT INSURED

. . . .

2.   We will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. We will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from any natural or

external forces, or occurs as a result of any combination of these:

....

d.    Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of loss, or when property is endangered.

....

g.    Fungus, including:

(1)    any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair, or replacement, by fungus;

(2)    any remediation of fungus, including the cost to:

(a)    remove the fungus from covered property or to repair, restore, or replace that property; or

(b)    tear out and replace any part of the building structure or other property as needed to gain access to the fungus; or

(3)    the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of fungus, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

### SIXTH DEFENSE

State Farm avers that the insurance policy at issue excludes the following losses:

### SECTION I – LOSSES NOT INSURED

....

3.    We will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, we will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.    conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b.    defect, weakness, inadequacy, fault, or unsoundness in:

(1)    planning, zoning, development, surveying, or siting;

(2)    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3)    materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4)    maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c.    weather conditions.

However, we will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described by this Section.

## SEVENTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – LOSS SETTLEMENT

Only the Loss Settlement Provisions shown in the Declarations apply. We will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and we will not pay, any amount for diminution of value.

## COVERAGE A – DWELLING

1.     A1 – Replacement Cost Loss Settlement – Similar Construction

    a.    We will pay the cost to repair or replace with like kind and quality for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

       (1)    until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

       (2)    when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

       (3)    to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

       (4)    we will not pay for increased costs resulting from enforcement of any ordinance or law regulating construction, repair, or demolition of a building structure or other structure, except as provided under OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

    b.    Wood Fences: We will pay the actual cash value for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A – Other Structures

## EIGHTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – LOSS SETTLEMENT

. . . .

## COVERAGE B – PERSONAL PROPERTY

1.     B1 – Limited Replacement Cost Loss Settlement

    a.    We will pay the cost to repair or replace property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY with property of like kind and quality, except for property listed in item b. below, subject to the following:

    (1)     until repair or replacement is completed, we will pay only the actual case value of the damaged property;

    (2)     after repair or replacement is completed, we will pay the difference between the actual cash value and the cost you have actually and necessarily spent to repair or replace the property; and

    (3)     if property is not repaired or replaced within two years after the date of loss, we will pay only the actual cash value.

b.    We will pay market value at the time of loss for:

    (1)     antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

    (2)     articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

    (3)     property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

    (1)     our cost to replace at the time of loss;

    (2)     the full cost of repair

    (3)     any special limit of liability described in this policy; or

    (4)     any applicable Coverage B limit of liability.

## NINTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – CONDITIONS

. . . .

2.    Your Duties After Loss. After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed.

    . . . .

b.    protect the property from further damage or loss and also:

    (1)     make reasonable and necessary temporary repairs required to protect the property; and

    (2)     keep an accurate record of repair expenses;

d.    as often as we reasonably require:

    (1) exhibit the damaged property;

    (2) provide us with any requested records and documents and allow us to make copies;

    (3) while not in the presence of any other insured:

        (a) give statements; and

        (b) submit to examinations under oath; and

    (4) produce employees, members of the insured's household, or others for examination under oath to the extent it is within the insured's power to do so; and

e.      submit to us, within 60 days after the loss, your signed, sworn proof of loss that sets for to the best of your knowledge and belief:

. . . .

However, if loss arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the covered property is located in an area within the declaration, you must submit the proof of loss to us within 180 days; but this 180 day period does not commence as long as the declaration of disaster or emergency is in existence and civil authorities are denying you access to your property.

## TENTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – PROPERTY COVERAGES

. . . .

## COVERAGE C – LOSS OF USE

The most we will pay for the sum of all losses combined under Additional Living Expense, Fair Rental Value, and Prohibited Use is the limit of liability shown in the Declarations for Coverage C – Loss of Use.

1.      Additional Living Expense. When a loss insured causes the residence premises to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of:

    a.     the time required to repair or replace the premises;

    b.     the time required for your household to settle elsewhere; or

    c.     24 months.

. . . .

3.      Prohibited Use. We will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the residence premises, provided that:

    a.     direct physical damage occurs to any property, other than covered property located on the residence premises, arising from a cause of loss that would be a loss insured under this policy if the damage had occurred to the property on the residence premises;

    b.     the residence premises is within one mile of property damaged by a cause of loss identified in 3.a. above; and

    c.     the action of the civil authority is take in response to:

        (1)    dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

(2)     dangerous physical conditions resulting from the damaged caused by the cause of loss identified in 3.a. above;

(3)     the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We will not pay for loss or expense due to cancellation of a lease or agreement.

## ELEVENTH DEFENSE

Should it be found that the damages sought by Plaintiffs were caused in part by a covered cause of loss and that any other insurance provides coverage for that covered cause of loss, State Farm pleads the "other insurance" provisions of the applicable State Farm insurance policy.

## TWELTH DEFENSE

State Farm affirmatively pleads the doctrine of payment, accord and satisfaction, set-off and/or for a credit to the extent same may be applicable or available. State Farm, as the alleged homeowner's insurer, further pleads all rights and defenses arising from the existence of and payment to Plaintiff from any source.

## THIRTEENTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

. . . .

## COVERAGE A – DWELLING

We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in this policy. **However, loss does not include and we will not pay for, any diminution in value**.

## RESERVATION OF RIGHTS

To the extent permitted by law, State Farm reserves its right to supplement and amend this Answer and to assert additional Affirmative Defenses as future discovery may warrant and require.

WHEREFORE, State Farm prays that this answer be deemed good and sufficient, and that after all legal delays and due proceedings are had, that there be judgment rendered herein in favor of State Farm and against Plaintiffs, dismissing Plaintiffs' claims with prejudice and at Plaintiffs' costs.

State Farm further prays for trial by jury.

State Farm further prays for all general and equitable relief to which it may be entitled.

Respectfully submitted,

STOCKWELL, SIEVERT, VICCELLIO,
CLEMENTS & SHADDOCK L.L.P.

BY: _____
TODD M. AMMONS (BAR #21441)
DAVID L. MORGAN (BAR #27015)
One Lakeside Plaza, Chase Bldg.,
4TH Fl.
Post Office Box 2900
Lake Charles, LA  70602
Phone:  (337) 436-9491
Fax  :  (337) 312-2929
tmammons@ssvcs.com
dlmorgan@ssvcs.com
*Attorneys for State Farm Fire and Casualty*
*Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing has this day been served on all counsel of record herein via email and by depositing same in the United States mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this 27th day of October, 2023.

TODD M. AMMONS

USPOSTAGE

quadient

FIRST-CLASS MAIL

$003.51⁰

02/27/2023 ZIP 70801
043M31346687

Baton Rouge ISM# 738

FRI 27 OCT 2023 PM

RECEIVED VIA MAIL

FOR RECORD 10/31/2023 11:12:53
Abigail J. Danna, DY CLERK
JEFFERSON PARISH, LA

**STOCKWELL, SIEVERT, VICELLIO, CLEMENTS & SHADDOCK**
**L.L.P.**
**P. O. Box 2900**
**LAKE CHARLES, LA 70602-2900**

**To:**   Jefferson Parish Clerk of Court
P.O. Box 10
Gretna, LA 70054

**Abigail J. Danna**

| | |
|---|---|
| **From:** | Abigail J. Danna |
| **Sent:** | Tuesday, October 31, 2023 11:20 AM |
| **To:** | 'tmammons@ssvcs.com' |
| **Subject:** | Special Master Fee Needed - 845-334 Division E |

**This email is regarding: Answer and Request for Notice**
**Case: Hron Management LLC vs. State Farm Fire and Casualty Company**

Good morning,
In a damage suit arising from Hurricane Ida, a fee is required for Special Master Administrative Expenses.
Please forward a check in the amount of $187.50 made payable to "Special Master Fee" to the attention of Abigail
Danna.
Should you have any questions, please contact me.

Thank you in advance,

**Abigail J Danna**
*Deputy Clerk of Court*
*24th JDC Civil Filing*
*Jefferson Parish Clerk of Court*
Thomas F. Donelon Courthouse
200 Derbigny St. Ste. 2400
Gretna LA 70053
Phone: (504) 364-2973
Fax: (504) 364-3780



Please be advised that any information provided to the Jefferson Parish Clerk of Court may be subject to disclosure under the Louisiana Public Records Law. Information contained in any correspondence, regardless of its source, may be a public record subject to public inspection and reproduction in accordance with the Louisiana Public Records Law, La. Rev. Stat. 44:1 et seq.

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this e-mail or by telephone

RECEIVED VIA MAIL
FOR RECORD 10/31/2023 11:26:32
Abigail J. Danna DY CLERK
JEFFERSON PARISH LA

Date: 10/27/2023
Time: 11:55 AM
Deputy Clerk: /s/Abigail J. Danna

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

**NO. 845-334     HURRICANE IDA CASE     DIVISION E**

### HRON MANAGEMENT LLC and HRON REAL ESTATE, LLC

### VERSUS

### STATE FARM FIRE AND CASUALTY COMPANY

**FILED:**_____        _____

**DEPUTY CLERK**

### REQUEST FOR WRITTEN NOTICE

TO     :     Clerk of Court
            Jefferson Parish, Louisiana

Dear Sir or Madam:

In accordance with the provisions of Articles 1571 and 1572 of the Louisiana Code of Civil Procedure, you are hereby requested to give us, as counsel for **STATE FARM FIRE AND CASUALTY COMPANY** in the above numbered and entitled cause, written notice, by mail, ten (10) days in advance of any date fixed for any trial or hearing of the case, whether on exception, rules or the merits thereof.

Also, in accordance with the provisions of Articles 1913 and 1914 of the Louisiana Code of Civil Procedure, you are hereby requested to send us immediate notice of any order or judgment made or rendered in this case upon the entry of any such order or judgment.

Thank you for your cooperation.

Respectfully submitted,

STOCKWELL, SIEVERT, VICCELLIO,
CLEMENTS & SHADDOCK

BY: _____
**TODD M. AMMONS** (#21441)
P.O. Box 2900(70602)
127 W. Broad, Ste 400
LAKE CHARLES, LA 70601
tmammons@ssvcs.com
337-436-9491 (Phone)
337-493-7209 (Fax)

1

## CERTIFICATE

**I HEREBY CERTIFY** that a copy of the above and foregoing has this day been served on all counsel of record herein by depositing same in the United States mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this 27th day of October, 2023.

_____
**TODD M. AMMONS**



**JON A. GEGENHEIMER**
**JEFFERSON PARISH CLERK OF COURT**
*24th Judicial District Court Civil Records Division – FAX Filing*
P.O. BOX 10 ● GRETNA LA 70054-0010 ● (504) 364-2971



# FACSIMILE FILING RECEIPT OF TRANSMISSION

**To:** TODD M AMMONS/ATTORNEY
FAX # 337-493-7209
Email: KLCORMIER@SSVCS.COM

October 27 _____, 20 23

**From:** s/ Schrell A. Shuff _____, *Deputy Clerk of Court*
**24th JDC FAX Filing ● (504) 364-2971**

**Re:** **Case #:** 845-334 **Div.:** E
**Case Title:** HRON MANAGEMENT LLC, Et Al vs STATE FARM FIRE AND CASUALTY COMPANY

**Total Number of Pages:** 18
**Document Type:** ANSWER AND DEFENSES/REQUEST FOR NOTICE

**Receipt is hereby acknowledged of the above described document, which was filed at**
11:55 _____ [X] A.M. [ ] P.M. on October 27 _____, 20 23.

PLEASE TAKE NOTICE that per La. R.S. 13:850, as amended by Act 109 of the 2016 Regular Legislative Session, the following shall be delivered to the clerk of court:
1. Fees for the facsimile filing and filing of the original document as stated below.
2. A transmission fee of $5.00.
3. Original documents identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. Original documents which are not identical to the facsimile filing or which include pages not included in the facsimile filing shall not be considered the original document.

NOTE: Although fees due may be paid by credit card, the facsimile filing shall have no force and effect if the original documents are not delivered to the clerk of court within 7 (seven) days, exclusive of legal holidays, after the clerk of court receives the facsimile filing.

NOTE: Per La. R.S. 13:850, the facsimile filing fee and transmission fee are incurred at the time the clerk of court receives the fax transmission, and the fees are due and payable regardless of whether the original documents are received.

[X] **Check or money order to "Jefferson Parish Clerk of Court"** $ $285.00

[ ] Check or money order payable to "East Baton Rouge Sheriff": $_____

[ ] Check or money order payable to "Jefferson Parish Sheriff": $_____

[ ] Check or money order payable to "Orleans Parish Civil Sheriff": $_____

[ ] Check or money order payable to "Louisiana Secretary of State": $_____

[ ] Check or money order payable to _____: $_____

[ ] Check or money order payable to _____: $_____

[ ] Send the La. Civil Case Reporting form required per La. R.S. 13:4688.

[ ] Other:

Payments to Jefferson Parish Clerk of Court can be made by credit card, all other payments must be sent by check or money order.
To pay by credit card go to: https://ssl.jpclerkofcourt.us/JeffNetGo/CaseDeposit select court "24th Civil JDC" and enter this case number.

# ***PLEASE ENCLOSE A COPY OF THIS ACKNOWLEDGMENT***
Received: Oct 27 2023 11:55:02 Pages: 20  JobID:ifax_CUUPRXAIOM
## WHEN ORIGINAL PLEADING IS SUBMITTED.***

E-Filing is available on JeffNet, visit www.jpclerkofcourt.us to learn more.

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619

2023/10/27 11:45:47    1  /20

Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.

P.O. Box 2900

Lake Charles

Louisiana              70602

**FROM**                          **TO**

Name:  Kristi Cormier                    clerk

Phone: 3374369491      Fax:  +1 337-493-7210      5043643780

E-mail:  klcormier@ssvcs.com

Sent:  10/27/23      at:  11:45:47 AM          20  page(s) (including cover)

Subject:

Comments:

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619

2023/10/27 11:45:47    2  /20

LAW OFFICES OF
## STOCKWELL, SIEVERT, VICCELLIO, CLEMENTS & SHADDOCK
L.L.P.

WILLIAM B. MONK
BRIAN L. COODY
SUSAN GAY VICCELLIO
BENJAMIN J. GUILBEAU, JR.
H. AUBREY WHITE, III (1,2)
TODD M. AMMONS
DAVID L. MORGAN
JOHN J. SIMPSON (3)
DALLAS K. KINGHAM
STEPHEN D. POLITO
ROSS M. RAILEY
———
(1) BOARD CERTIFIED*
ESTATE PLANNING AND
ADMINISTRATION SPECIALIST
*BY THE LOUISIANA BOARD
OF LEGAL SPECIALIZATION

4TH & 5TH FLOORS, ONE LAKESIDE PLAZA
127 WEST BROAD STREET - 70601
———
POST OFFICE BOX 2900 - 70602-2900

TELEPHONE (337) 436-9491

FAX (337) 493-7210 (4th Floor)
FAX (337) 493-7209 (5th Floor)

www.ssvcs.com

LAKE CHARLES, LOUISIANA

ELIZABETH F. SHEA
KATHLEEN T. DBANDA
ALEX E. MOUHOT
DEREK G. HOFFMAN
JUSTIN J. BAKER
CHELSEA CARROLL CHAMPAGNE
JACOB S. CALDWELL

OF COUNSEL
JOHN S. BRADFORD
PAUL L. VEAZEY, JR.
ANDREW D. McGLATHERY, III
J. GREGORY BERGSTEDT

(2) LL.M IN TAXATION

(3) ALSO ADMITTED IN TEXAS

October 27, 2023

## TELECOPY TRANSMITTAL
## FOR IMMEDIATE DELIVERY

| TO:Jefferson Parish Clerk of Court | FAX #: 504-364-3780 |
|---|---|
| | |
| | |

| | | |
|---|---|---|
| **FROM** | : | Todd M. Ammons |
| **FAX #** | : | (337) 493-7210 –or– (337) 493-7209 |
| **MAIN #** | : | (337) 436-9491 |
| **RE** | : | Hron Management LLC and Hron Real Estate, LLC Vs  State Farm Fire and Casualty Company **Docket No. 845-334** |
| **MESSAGE :** | | Please see attached for fax filing.  Please forward your confirmation and invoice for costs of same. |

No. of Pages: _19_          SSVC&S File No 6994/49557          Operator: klc
Including cover page]

IMPORTANT - THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY ADDRESS VIA THE U.S. POSTAL SERVICE.  THANK YOU.

OLIVER P. STOCKWELL  (1907-1993)        FRED H. SIEVERT, JR.  (1923-1988)        CHARLES D. VICCELLIO  (1933-2023)        ROBERT W. CLEMENTS  (1934-2004)

24th JDC Civil Fax Filed:10/27/2023  11:55:02  Case:845334  Div:E  ID:72619

2023/10/27 11:45:47     3     /20

24TH **JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 845-334        HURRICANE IDA CASE        DIVISION E**

**HRON MANAGEMENT LLC and HRON REAL ESTATE, LLC**

**VERSUS**

**STATE FARM FIRE AND CASUALTY COMPANY**

**FILED:**_____        _____
                                        **DEPUTY CLERK**

## ANSWER AND DEFENSES

**NOW COMES** Defendant, State Farm Fire and Casualty Company ("State Farm"), through undersigned counsel, who in Answering Plaintiff's Petition for Damages, denies each and every allegation contained therein except those that are expressly admitted herein.

**AND NOW**, answering the severally numbered articles of the Plaintiff's Complaint, State Farm respectfully avers:

1(a).

The allegations contained in paragraph 1(a) as to the status Hron Management LLC are denied as written.  State Farm admits that Hron Management LLC is a Louisiana limited liability company. The members of this limited liability company are unknown at this point in time.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

1(b).

The allegations contained in paragraph 1(a) as to the status Hron Real Estate LLC are denied as written.  State Farm admits that Hron Real Estate LLC is a Louisiana limited liability company. The members of this limited liability company are unknown at this point in time.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

2.

The allegations contained in paragraph 2 as to the status of State Farm and service of process are admitted.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

3.

State Farm admits subject matter jurisdiction.  State Farm denies it is presently liable to

2023/10/27 11:45:47    4   /20

Plaintiffs for either contractual or statutory damages.

4.

State Farm admits venue. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

5.

State Farm denies the allegations contained in paragraph 5 for lack of sufficient information to justify a belief therein. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

6.

State Farm denies the allegations of Paragraph 6 as written. State Farm admits that policies were issued, subject to all terms and conditions. State Farm avers that the polices, being written contracts, are the best evidence of their terms, conditions, and exclusions which are incorporated as if pled herein in their entirety. State Farm denies everything at variance therewith. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

7.

State Farm denies the allegations of Paragraph 7 as written. State Farm admits that Plaintiffs' Property sustained some damage as a result of Hurricane Ida. The amount and significance of damage sustained by Plaintiffs is in dispute. State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

8.

State Farm denies the allegations of Paragraph 8 as written. State Farm admits that damage was reported. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

9.

The allegations contained in paragraph 9 are denied as written. State Farm admits that an adjuster inspected the Property on behalf of State Farm. State Farm further admits that policies were issued, subject to all terms and conditions. State Farm avers that the policy, being a written contract, is the best evidence of its terms, conditions, and exclusions which are incorporated as if pled herein in their entirety. State Farm denies everything at variance therewith. State Farm asserts

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619



that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

10.

State Farm denies the allegations of Paragraph 10 as written. State Farm admits that it received submissions on behalf of Plaintiffs. The submissions, being written documents, are the best evidence of their contents. The accuracy and correctness of the submissions are disputed. State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

11.

State Farm denies the allegations of Paragraph 11. State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

12.

State Farm denies the allegations of Paragraph 12. State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

13.

State Farm denies the allegations of Paragraph 13. State Farm asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid and denies it is presently liable to Plaintiffs for either contractual or statutory damages.

14.

State Farm denies the allegations of Paragraph 14. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

15.

State Farm denies the allegations of Paragraph 15. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619

further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

16.

State Farm denies the allegations of Paragraph 16.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

17.

State Farm denies the allegations of Paragraph 17.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

18.

State Farm denies the allegations of Paragraph 18.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

19.

In response to Paragraph 19, State Farm fully repeats, reiterates, and re-alleges its defenses and answers to Paragraphs 1 through 18, as if fully set forth herein.

20.

State Farm denies the allegations of Paragraph 20.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.



2023/10/27 11:45:47    7  /20

21.

State Farm admits that policies were issued, subject to all terms and conditions.  State Farm avers that the policy, being a written contract, is the best evidence of its terms, conditions, and exclusions which are incorporated as if pled herein in their entirety.  State Farm denies everything at variance therewith.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

22.

State Farm denies the allegations of Paragraph 22.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.   State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

23.

State Farm denies the allegations of Paragraph 23.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.   State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

24.

State Farm denies the allegations of Paragraph 24.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.   State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

25.

State Farm denies the allegations of Paragraph 25.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.   State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619

26.

State Farm denies the allegations of Paragraph 26.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

27.

In response to Paragraph 27, State Farm fully repeats, reiterates, and re-alleges its defenses and answers to Paragraphs 1 through 26, as if fully set forth herein.

28.

State Farm denies the allegations of Paragraph 28.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

29,

The allegations contained in Paragraph 29 require no answer on the part of State Farm as these allegations call for legal conclusions.  To the extent an answer is required, State Farm admits certain obligations under Louisiana Law, subject to any changes made by the Louisiana Insurance Commissioner.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

30.

The allegations contained in Paragraph 30 require no answer on the part of State Farm as these allegations call for legal conclusions.  To the extent an answer is required, State Farm admits certain obligations under Louisiana Law, subject to any changes made by the Louisiana Insurance Commissioner.  State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid.  State Farm denies

it is presently liable to Plaintiffs for either contractual or statutory damages.

31.

The allegations contained in Paragraph 31 require no answer on the part of State Farm as these allegations call for legal conclusions. To the extent an answer is required, State Farm admits certain obligations under Louisiana Law, subject to any changes made by the Louisiana Insurance Commissioner. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

32.

The allegations contained in paragraph 32 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

33.

The allegations contained in paragraph 33 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

34.

The allegations contained in Paragraph 34 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

35.

The allegations contained in Paragraph 35 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and

further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

36.

In response to Paragraph 36, State Farm fully repeats, reiterates, and re-alleges its defenses and answers to Paragraphs 1 through 35, as if fully set forth herein.

37.

The allegations contained in Paragraph 37 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

38.

The allegations contained in Paragraph 38 are denied. State Farm specifically asserts that it has complied with all applicable laws and regulations in the handling of Plaintiff's claim and further asserts that all undisputed amounts for which State Farm has received sufficient proof of loss have been timely paid. State Farm denies it is presently liable to Plaintiffs for either contractual or statutory damages.

39.

State Farm joins in Plaintiffs' request for trial by jury.

## AFFIRMATIVE DEFENSES

And now, in further responding to the allegations, State Farm asserts the following affirmative defenses, to the extent applicable:

### FIRST DEFENSE

The claims asserted in the Complaint for Damages are based on a contract of insurance between the parties. State Farm avers that the policy issued to Plaintiffs, being a written contract, is the best evidence of the terms, conditions, exclusions, and limitations contained therein, all of which are pled as if copied herein in their entirety.

### SECOND DEFENSE

Certain damages sought by Plaintiffs were not caused by a covered cause of loss pursuant



2023/10/27 11:45:47    11  /20

to the terms and conditions of the applicable State Farm insurance policy.

### THIRD DEFENSE

To the extent that Plaintiffs have already received any payments from State Farm for their losses, State Farm avers that those payments were appropriate, that Plaintiffs have already been paid everything that they are owed under the insurance policy, and in the event of a further judgment in favor of Plaintiffs, State Farm claims a credit or a setoff for all amounts previously paid.

### FOURTH DEFENSE

State Farm avers that the insurance policy at issue excludes the following losses:

### SECTION I – LOSSES NOT INSURED

1.  We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    . . . .

    g.    wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

    h.    corrosion, electrolysis, or rust;

    i.    wet or dry rot;

    . . . .

    k.    settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

    . . . .

    However, we will pay for any resulting loss from items a. through l. Unless the resulting loss is itself a Loss Not Insured by this Section.

### FIFTH DEFENSE

State Farm avers that the insurance policy at issue excludes the following losses:

### SECTION 1 – LOSSES NOT INSURED

. . . .

2.  We will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. We will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from any natural or

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619



external forces, or occurs as a result of any combination of these:

    . . . .

d.    Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of loss, or when property is endangered.

    . . . .

g.    Fungus, including:

    (1)    any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair, or replacement, by fungus;

    (2)    any remediation of fungus, including the cost to:

        (a)    remove the fungus from covered property or to repair, restore, or replace that property; or

        (b)    tear out and replace any part of the building structure or other property as needed to gain access to the fungus; or

    (3)    the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of fungus, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

### SIXTH DEFENSE

State Farm avers that the insurance policy at issue excludes the following losses:

### SECTION I – LOSSES NOT INSURED

. . . .

3.    We will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, we will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

    a.    conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

    b.    defect, weakness, inadequacy, fault, or unsoundness in:

        (1)    planning, zoning, development, surveying, or siting;

        (2)    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

        (3)    materials used in repair, construction, renovation, remodeling, grading, or compaction; or

        (4)    maintenance;

    of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

    c.    weather conditions.



2023/10/27 11:45:47    13  /20

However, we will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described by this Section.

## SEVENTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – LOSS SETTLEMENT

Only the Loss Settlement Provisions shown in the Declarations apply. We will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and we will not pay, any amount for diminution of value.

## COVERAGE A – DWELLING

1.   A1 – Replacement Cost Loss Settlement – Similar Construction

    a.   We will pay the cost to repair or replace with like kind and quality for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

        (1)   until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

        (2)   when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

        (3)   to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

        (4)   we will not pay for increased costs resulting from enforcement of any ordinance or law regulating construction, repair, or demolition of a building structure or other structure, except as provided under OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.

    b.   Wood Fences: We will pay the actual cash value for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A – Other Structures

## EIGHTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – LOSS SETTLEMENT

. . . .

## COVERAGE B – PERSONAL PROPERTY

1.   B1 – Limited Replacement Cost Loss Settlement

    a.   We will pay the cost to repair or replace property covered under SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY with property of like kind and quality, except for property listed in item b. below, subject to the following:

24th JDC Civil Fax Filed:10/27/2023  11:55:02  Case:845334 Div:E  ID:72619



2023/10/27 11:45:47     14  /20

    (1)    until repair or replacement is completed, we will pay only the actual case value of the damaged property;

    (2)    after repair or replacement is completed, we will pay the difference between the actual cash value and the cost you have actually and necessarily spent to repair or replace the property; and

    (3)    if property is not repaired or replaced within two years after the date of loss, we will pay only the actual cash value.

b.    We will pay market value at the time of loss for:

    (1)    antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

    (2)    articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

    (3)    property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

    (1)    our cost to replace at the time of loss;

    (2)    the full cost of repair

    (3)    any special limit of liability described in this policy; or

    (4)    any applicable Coverage B limit of liability.

## NINTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – CONDITIONS

. . . .

2.    **Your Duties After Loss.** After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed.

    . . . .

b.    protect the property from further damage or loss and also:

    (1)    make reasonable and necessary temporary repairs required to protect the property; and

    (2)    keep an accurate record of repair expenses;

d.    as often as we reasonably require:

    (1) exhibit the damaged property;

    (2) provide us with any requested records and documents and allow us to make copies;

    (3) while not in the presence of any other insured:

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619



2023/10/27 11:45:47     15  /20

(a) give statements; and

(b) submit to examinations under oath; and

(4) produce employees, members of the insured's household, or others for examination under oath to the extent it is within the insured's power to do so; and

e.  submit to us, within 60 days after the loss, your signed, sworn proof of loss that sets for to the best of your knowledge and belief:

. . . .

However, if loss arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the covered property is located in an area within the declaration, you must submit the proof of loss to us within 180 days; but this 180 day period does not commence as long as the declaration of disaster or emergency is in existence and civil authorities are denying you access to your property.

## TENTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

## SECTION I – PROPERTY COVERAGES

. . . .

## COVERAGE C – LOSS OF USE

The most we will pay for the sum of all losses combined under Additional Living Expense, Fair Rental Value, and Prohibited Use is the limit of liability shown in the Declarations for Coverage C – Loss of Use.

1.  Additional Living Expense. When a loss insured causes the residence premises to become uninhabitable, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of:

    a.  the time required to repair or replace the premises;

    b.  the time required for your household to settle elsewhere; or

    c.  24 months.

. . . .

3.  Prohibited Use. We will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the residence premises, provided that:

    a.  direct physical damage occurs to any property, other than covered property located on the residence premises, arising from a cause of loss that would be a loss insured under this policy if the damage had occurred to the property on the residence premises;

    b.  the residence premises is within one mile of property damaged by a cause of loss identified in 3.a. above; and

    c.  the action of the civil authority is take in response to:

        (1)  dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619



(2)    dangerous physical conditions resulting from the damaged caused by the cause of loss identified in 3.a. above;

(3)    the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We will not pay for loss or expense due to cancellation of a lease or agreement.

### ELEVENTH DEFENSE

Should it be found that the damages sought by Plaintiffs were caused in part by a covered cause of loss and that any other insurance provides coverage for that covered cause of loss, State Farm pleads the "other insurance" provisions of the applicable State Farm insurance policy.

### TWELTH DEFENSE

State Farm affirmatively pleads the doctrine of payment, accord and satisfaction, set-off and/or for a credit to the extent same may be applicable or available. State Farm, as the alleged homeowner's insurer, further pleads all rights and defenses arising from the existence of and payment to Plaintiff from any source.

### THIRTEENTH DEFENSE

State Farm avers that the insurance policy at issue states the following:

. . . .

**COVERAGE A – DWELLING**

We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or otherwise excluded or limited in this policy. **However, loss does not include and we will not pay for, any diminution in value**.

### RESERVATION OF RIGHTS

To the extent permitted by law, State Farm reserves its right to supplement and amend this Answer and to assert additional Affirmative Defenses as future discovery may warrant and require.

WHEREFORE, State Farm prays that this answer be deemed good and sufficient, and that after all legal delays and due proceedings are had, that there be judgment rendered herein in favor of State Farm and against Plaintiffs, dismissing Plaintiffs' claims with prejudice and at Plaintiffs' costs.

State Farm further prays for trial by jury.

State Farm further prays for all general and equitable relief to which it may be entitled.



2023/10/27 11:45:47    17  /20

Respectfully submitted,

STOCKWELL, SIEVERT, VICCELLIO
CLEMENTS & SHADDOCK L.L.P.

BY: _____
TODD M. AMMONS (BAR #21441)
DAVID L. MORGAN (BAR #27015)
One Lakeside Plaza, Chase Bldg.,
4TH Fl.
Post Office Box 2900
Lake Charles, LA 70602
Phone: (337) 436-9491
Fax : (337) 312-2929
tmammons@ssvcs.com
dlmorgan@ssvcs.com
*Attorneys for State Farm Fire and Casualty
Company*

24th JDC Civil Fax Filed:10/27/2023 11:55:02 Case:845334 Div:E ID:72619

2023/10/27 11:45:47    18  /20

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing has this day been served on all counsel of record herein via email and by depositing same in the United States mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this 27th day of October, 2023.

TODD M. AMMONS

2023/10/27 11:45:47    19  /20

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

**NO. 845-334       HURRICANE IDA CASE       DIVISION E**

**HRON MANAGEMENT LLC and HRON REAL ESTATE, LLC**

**VERSUS**

**STATE FARM FIRE AND CASUALTY COMPANY**

FILED:_____          _____
                                                        **DEPUTY CLERK**

**REQUEST FOR WRITTEN NOTICE**

TO    :    Clerk of Court
            Jefferson Parish, Louisiana

Dear Sir or Madam:

    In accordance with the provisions of Articles 1571 and 1572 of the Louisiana Code of Civil Procedure, you are hereby requested to give us, as counsel for **STATE FARM FIRE AND CASUALTY COMPANY** in the above numbered and entitled cause, written notice, by mail, ten (10) days in advance of any date fixed for any trial or hearing of the case, whether on exception, rules or the merits thereof.

    Also, in accordance with the provisions of Articles 1913 and 1914 of the Louisiana Code of Civil Procedure, you are hereby requested to send us immediate notice of any order or judgment made or rendered in this case upon the entry of any such order or judgment.

    Thank you for your cooperation.

                Respectfully submitted,

                STOCKWELL, SIEVERT, VICCELLIO,
                CLEMENTS & SHADDOCK

                *[signature]*

    BY: _____
                **TODD M. AMMONS (#21441)**
                P.O. Box 2900(70602)
                127 W. Broad, Ste 400
                LAKE CHARLES, LA 70601
                tmammons@ssvcs.com
                337-436-9491 (Phone)
                337-493-7209 (Fax)

1

2023/10/27 11:45:47      20  /20

## CERTIFICATE

**I HEREBY CERTIFY** that a copy of the above and foregoing has this day been served on all counsel of record herein by depositing same in the United States mail, postage prepaid and properly addressed.

Lake Charles, Louisiana, this 27th day of October, 2023.

**TODD M. AMMONS**

2

24th JDC Civil Fax Filed:10/27/2023  11:55:02  Case:845334 Div:E  ID:72619